**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MARVIN B. STRODE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VILLAGE OF WASHINGTON PARK, | ) | CASE NO. 3:26-CV-00450-NJR |
| ILLINOIS; MAYOR ANGIE RODGERS | ) | |
| a/k/a ANGIE ROGERS, in her official | ) | |
| capacity; VILLAGE CLERK ANITA | ) | |
| CLARK, in her official capacity; | ) | **JUDGE NANCY J. ROSENSTENGEL** |
| TRUSTEE CARLENE TUCKER, in her | ) | **SECOND AMENDED COMPLAINT** |
| official capacity; TRUSTEE MARY | ) | |
| MCKINNEY, in her official capacity; | ) | |
| TRUSTEE KENDRICK McKNUCKLES, | ) | |
| in his official capacity; TRUSTEE | ) | |
| JULIETTE GOSA, in her official capacity; | ) | |
| TRUSTEE JAMES MADKINS, in his | ) | |
| official capacity; TRUSTEE KAWAII | ) | |
| WILLIAMS, in her official capacity; | ) | |
| ALLEN E. BONDS, in his official | ) | |
| capacity; and JOHN DOE OFFICER(S) 1- | ) | |
| 7, in their official capacities, | ) | |
| Defendants. | ) | |

FILED

JUN 2 2 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLLINOIS
E. ST. LOUIS OFFICE

1

Plaintiff Marvin B. Strode, proceeding pro se, respectfully submits this Second Amended Complaint against Defendants in their official capacities only and alleges as follows:

**TABLE OF CONTENTS**

I. Introduction II.

Jurisdiction and Venue

III. Parties

IV. Factual Allegations

A. Plaintiff's Background and Opposition Activity

B. ILETSB, Form E, Waiver, FOIA, and Employment Records

C. Officer Status Information Concerning Clemons, Diggs, and Pruitt

D. Bonds' Inactive Status and Unauthorized Form E Filings

E. Village Credential Oversight Failures

F. Seven Traffic Stops Involving Plaintiff

G. March 2024 LEDI Application and Municipal Ratification

H. Public Ratification of Bonds

I. Illegally Appointed Officers and Related Incidents

J. Municipal Liability, Pattern of Harm, and Foreseeability

K. Failure to Train, Supervise, Screen, Discipline, and Investigate

L. Causation Linking the Village's Failures to Plaintiff's Injuries

V. Claims for Relief

Count I — Fourth Amendment (42 U.S.C. § 1983)

Count II — Fourteenth Amendment Due Process (42 U.S.C. § 1983)

Count III — Municipal Liability Under Monell

Count IV — Declaratory and Injunctive Relief

VI. Prayer for Relief

## I. INTRODUCTION

1. Plaintiff brings this civil rights action under 42 U.S.C. § 1983 against the Village of Washington Park for maintaining a system of unlawful police appointments, defective credential verification practices, unauthorized LEDI/Form E submissions, and failures of supervision, training, and oversight that resulted in Plaintiff being subjected to seven unconstitutional traffic stops by individuals lacking lawful police authority.

2. Plaintiff alleges that the Village permitted an inactive, uncertified, and unauthorized individual—Allen E. Bonds—to exercise police authority functions, submit personnel records, appoint officers, and control LEDI/Form E access despite lacking lawful authority under Illinois law and ILETSB requirements.

3. Plaintiff alleges that the Village's failures created a foreseeable and recurring pattern of unconstitutional seizures, misuse of police authority, and deployment of uncertified or improperly appointed individuals, culminating in seven unlawful traffic stops of Plaintiff between 2022 and 2025.

4. Plaintiff seeks damages, declaratory relief, and injunctive relief to prevent future violations and to require the Village to implement lawful credential verification, appointment, training, and oversight procedures.

3

## II. JURISDICTION AND VENUE

5. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

6. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims arising under federal law and seeks redress for the deprivation of constitutional rights.

7. Venue is proper in the Southern District of Illinois under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred within this District and the Defendant municipality is located within this District.

## III. PARTIES

8. Plaintiff Marvin B. Strode is a resident of St. Clair County, Illinois.

9. Defendant Village of Washington Park is an Illinois municipal corporation responsible for the operation, supervision, appointment, training, and oversight of its police personnel.

10. At all relevant times, the Village acted through its policymakers, including the Mayor, Board of Trustees, and individuals granted LEDI/Form E authority.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Background and Opposition Activity

4

11. Plaintiff is a long-time resident of Washington Park who has consistently opposed unlawful police practices, improper credentialing, and misuse of authority within the Village.

12. Plaintiff has submitted FOIA requests, raised concerns with Village officials, and documented irregularities in police appointments, certifications, and LEDI/Form E submissions.

13. Plaintiff's opposition activity placed him in conflict with individuals acting under disputed or unauthorized police authority.

## B. ILETSB, Form E, Waiver, FOIA, and Employment Records

14. The Illinois Law Enforcement Training and Standards Board ("ILETSB") maintains official records of officer certification, appointment, separation, waivers, and employment status.

15. Illinois law requires that only the employing agency—through the Mayor, Village Clerk, or authorized municipal designee—may submit Form E appointment or separation documents.

16. A police officer cannot legally submit his own appointment, separation, status change, or employer-side certification.

17. Plaintiff obtained ILETSB records through FOIA showing discrepancies, unauthorized submissions, and irregularities involving multiple Washington Park officers.

## C. Officer Status Information Concerning Clemons, Diggs, and Pruitt

5

18. Plaintiff alleges that ILETSB records for officers Clemons, Diggs, and Pruitt contain gaps, missing appointments, missing waivers, or inactive statuses inconsistent with their deployment by the Village.

19. Plaintiff alleges that these officers exercised police authority despite lacking verified certification, lawful appointment, or proper background completion.

20. Plaintiff alleges that the Village failed to verify their status before allowing them to conduct traffic stops or exercise police powers.

## D. Bonds' Inactive Status and Unauthorized Form E Filings

21. Plaintiff alleges that ILETSB records list Allen E. Bonds as inactive and separated from the Washington Park Police Department effective October 15, 2021.

22. Plaintiff alleges that ILETSB records simultaneously list Bonds as a full-time appointed police officer with the Cahokia Heights Police Department as of August 11, 2021.

23. Plaintiff alleges that under Illinois law and ILETSB procedures, only the employing agency may submit Form E appointment or separation documents.

24. Plaintiff alleges that despite these requirements, Bonds submitted his own separation from Washington Park on or about October 13, 2021, listing "Hired by Cahokia Police Department" as the reason.

25. Plaintiff alleges that Bonds also submitted his own Form E "administrator appointment," dated May 17, 2021, and transmitted through LEDI on January 20, 2022, months after the Washington Park police station had been destroyed by fire.

6

26. Plaintiff alleges that Bonds' 2022 self-submitted Form E used the address of the burned-down police station, rendering the filing false, misleading, and indicative of intent to deceive.

27. Plaintiff alleges that a self-submitted Form E violates ILETSB LEDI access rules, the Illinois Police Training Act, and internal control requirements governing state certification systems.

28. Plaintiff alleges that because Bonds' Form E filings were self-submitted and unauthorized, they are invalid, void, and legally ineffective.

29. Plaintiff alleges that Bonds' last valid status in Washington Park was Chief of Police because no lawful separation, appointment, or status change was ever submitted by the Village.

30. Plaintiff alleges that while Bonds remained legally Chief of Police under ILETSB rules, he was simultaneously employed full-time as a Sergeant with the Cahokia Heights Police Department, in violation of Illinois prohibitions on dual full-time law enforcement employment.

## D. Bonds' Inactive Status and Unauthorized Form E Filings

31. Plaintiff alleges that a self-submitted Form E violates ILETSB LEDI access rules, the Illinois Police Training Act reporting requirements, and internal control requirements governing state certification systems.

32. Plaintiff alleges that a self-submitted Form E constitutes unauthorized use of a state system, false certification, and a filing that is not legally binding on the employing agency or ILETSB.

7

33. Plaintiff alleges that because Bonds' Form E filings were self-submitted and unauthorized, they are invalid, void, and legally ineffective, and therefore cannot alter his employment status.

34. Plaintiff alleges that when a Form E submission is void, the officer's last valid status remains in effect. Plaintiff alleges that Bonds' last valid status in Washington Park was Chief of Police because no lawful separation, appointment, or status change was ever submitted by the Village.

35. Plaintiff alleges that while Bonds remained legally Chief of Police under ILETSB rules, he was employed full-time as a Sergeant with the Cahokia Heights Police Department, in violation of Illinois prohibitions on dual full-time law enforcement employment, dual full-time certification, and dual full-time pension credit.

36. Plaintiff alleges that Bonds' self-submitted filings attempted to create the appearance that he was "inactive," "administrator," or "separated," but these filings were false, unauthorized, contradictory, and unsupported by any lawful appointment, board action, mayoral approval, oath of office, or statutory authority.

37. Plaintiff alleges that because Bonds' own appointment and separation paperwork was invalid, any appointments he made while acting under this false authority were void, as a Chief cannot make valid appointments while acting under fraudulent, unauthorized, or illegally obtained authority.

38. Plaintiff alleges that Bonds' actions created a false legal identity, a false chain of command, and false state records, and that the Village's failure to correct these records resulted in unlawful appointments, unlawful authority, and violations of state law and ILETSB requirements.

39. Plaintiff alleges that despite Bonds' inactive or unauthorized status, Bonds submitted or caused to be submitted fifteen (15) challenged Notice of Appointment filings between approximately October 13, 2021 and December 31, 2025 through EDI or LEDI.

40. Plaintiff alleges that the Village failed to detect, prevent, investigate, or correct Bonds' unauthorized appointment activity, despite information showing that Bonds lacked lawful authority.

41. Plaintiff alleges that the Village's continued acceptance of Bonds' submissions, and its continued treatment of Bonds as Chief or Administrator, constituted municipal ratification of his unauthorized actions.

42. Plaintiff alleges that the March 2024 LEDI Application, signed by the Mayor, shows that the Village formally approved Bonds' LEDI access and represented him as Chief of Police in 2024, despite his alleged inactive status since October 15, 2021, thereby ratifying his unauthorized appointment activity.

43. **Plaintiff further alleges that although Bonds remained the last validly appointed Chief of Police under ILETSB records, his authority to act as Chief was fatally compromised because he operated under false, fraudulent, and unauthorized paperwork, including self-submitted Form E filings, dual full-time employment, and misrepresented status.**

44. **Plaintiff alleges that because Bonds' asserted authority was based on false records and unauthorized submissions, every appointment he made was coram non judice — actions taken without lawful authority — rendering all such appointments void, invalid, and legally ineffective.**

**E. Village Credential Oversight Failures**

9

45. Plaintiff alleges that the Village failed to maintain an adequate credential oversight system for confirming officer certification, activation status, waiver status, appointment status, rank authority, background completion, and lawful authority before police powers were exercised.

46. Plaintiff alleges that the Village failed to screen officers before deployment, resulting in uncertified, inactive, improperly appointed, or inadequately screened individuals exercising police authority.

47. Plaintiff alleges that the Village failed to discipline officers involved in shootings, pursuits, crashes, excessive force incidents, and other harmful events described in this Complaint.

48. Plaintiff alleges that the Village failed to investigate repeated incidents involving officers whose appointments were submitted by Bonds during his inactive or unauthorized period.

49. Plaintiff alleges that the Village failed to supervise Bonds and other personnel, allowing unauthorized individuals to submit Form E filings, LEDI entries, and appointment records without lawful authority.

50. Plaintiff alleges that the Village failed to control LEDI/Form E access, allowing Bonds to continue submitting personnel records despite his inactive or unauthorized status.

51. Plaintiff alleges that the Village failed to verify certification status, appointment authority, background completion, and rank authority, resulting in widespread misuse of police powers.

52. Plaintiff alleges that these failures directly contributed to the challenged appointments and harmful incidents described in this Complaint.

## F. Seven Traffic Stops Involving Plaintiff

51. Plaintiff alleges that he was subjected to seven traffic stops by persons purporting to act as Washington Park police officers during the period when the Village's police department operated under disputed, defective, or inadequately verified authority.

52. The seven traffic stops occurred as follows:

    a. November 2022 — Forre Street near the old police station

    b. May 2023 — near the residence of Ferris Williams

    c. September 2023 — near Gosa's house by the old school

    d. March 2024 — after Plaintiff left the residence of Mary McKinney

    e. October 2024 — between James Madkins' house and Package I Liquor

    f. February 2025 — on Bunkum Road near the residence of Suggs

    g. December 2025 — at Church's Chicken on Caseyville Avenue

53. Plaintiff alleges that no tickets were issued from the seven traffic stops.

54. Plaintiff alleges that the absence of tickets supports his allegation that the stops were not legitimate law enforcement actions, but instead harassment, intimidation, unlawful seizures, and misuse of police authority.

55. Plaintiff alleges that each stop restricted his freedom of movement and constituted a seizure under the Fourth Amendment.

56. Plaintiff alleges that the persons conducting or participating in the stops lacked lawful appointment, lacked proper certification, lacked valid authority, or acted under a municipal police structure that failed to verify such authority.

11

57. Plaintiff alleges that the stops caused fear, humiliation, distress, loss of security, loss of public trust, loss of confidence in local government, and deprivation of constitutional rights.

58. Plaintiff alleges that the seven stops were not isolated mistakes but part of a pattern showing municipal failure to supervise, failure to verify authority, failure to control police deployment, failure to train, and failure to correct unauthorized or inadequately verified exercises of police authority.

59. Plaintiff alleges that the seven traffic stops occurred during the same period in which the Village deployed officers who were allegedly illegally appointed, uncertified, inactive, or otherwise unauthorized.

60. Plaintiff alleges that the Village's failure to verify appointment authority, certification status, and lawful police status created the conditions that allowed unauthorized individuals to conduct the stops.

61. Plaintiff alleges that the stops were the foreseeable result of the Village's systemic failures described in this Complaint.

## G. March 2024 LEDI Application Showing Village Ratification of Bonds' Authority

62. On or about March 18–19, 2024, a LEDI Application was submitted to ILETSB listing Allen E. Bonds as Chief of Police for the Village of Washington Park.

63. The LEDI Application is an official state form required for access to the Law Enforcement Data Information system, which controls Form E submissions, personnel records, roster signing, training history, firearms qualification entries, professional conduct access, and other police authority functions.

64. The LEDI Application submitted for Bonds contains the following entries:

   a. Name and Title: ALLEN BONDS, CHIEF OF POLICE

   b. Agency: WASHINGTON PARK

   c. Email: abond@washparkpd.com

   d. Phone: 618-875-9115

   e. Multiple access boxes checked, including New User, Transfer Agencies, Add Additional Agencies, Add Form E, Firearms Qualification, Training History, Professional Conduct, and Roster Sign

65. The LEDI Application contains a mandatory legal warning stating that usage of the system under false pretenses or misrepresentation of identity constitutes a Class 2 felony.

66. The LEDI Application further states that access must be revoked if the applicant's employment status or duties change.

67. The LEDI Application bears Bonds' signature dated March 18, 2024, despite Plaintiff's allegation that Bonds became inactive, uncertified, separated, or otherwise without lawful Washington Park law enforcement status on or about October 15, 2021.

68. The LEDI Application also contains an Agency Head signature, identified by Plaintiff as Mayor Moore, dated March 19, 2024, confirming that the Village granted Bonds permission to access LEDI on behalf of the agency.

69. Plaintiff alleges that the Village's signature on the LEDI Application constitutes direct municipal ratification of Bonds' claimed authority years after his alleged inactive or unauthorized status.

70. Plaintiff alleges that the LEDI Application proves, or at minimum supports a reasonable inference, that the Village knowingly allowed Bonds to continue exercising police authority functions despite lacking lawful authority.

71. Plaintiff alleges that the LEDI Application is further evidence of the Village's failure to maintain any reliable system of verification, oversight, or credential control.

72. Plaintiff alleges that the LEDI Application demonstrates that Village policymakers affirmatively approved Bonds' continued exercise of police authority functions, supporting Plaintiff's Monell ratification theory.

73. Plaintiff alleges that the LEDI Application also supports the allegation that Village officials violated or disregarded official duty requirements, including 720 ILCS 5/33-3.

## H. Public Ratification of Bonds

74. Plaintiff alleges that during the March 10–12, 2026 KSDK Channel 5 news broadcast, Mayor Angie Rodgers knowingly stood beside Allen E. Bonds while he appeared in a Washington Park Chief of Police uniform, despite knowing that she had never submitted his June 17, 2025 appointment paperwork to ILETSB, had never administered the oath of office, and had never filed any oath documentation.

75. Plaintiff alleges that Mayor Rodgers knew Bonds remained employed as a Sergeant under Cahokia Heights Police Chief Thomas Trice, yet publicly presented Bonds as the lawful Chief of Police and allowed him to accept police radios valued at more than $30,000 from Chief Trice during the broadcast.

76. Plaintiff alleges that Bonds appeared publicly in uniform with Chief insignia during a KSDK news broadcast or public event involving Washington Park and Cahokia Heights.

14

77. Plaintiff alleges that FOIA and municipal records contain no documentation of lawful appointment supporting the role portrayed by Bonds in that broadcast or public appearance.

78. Plaintiff alleges that Bonds' public appearance as Chief, together with the presence, knowledge, acquiescence, or ratification of Village officials, showed continued recognition of Bonds' claimed authority despite disputed appointment, certification, and employment status.

79. Plaintiff alleges that the Village's conduct was not a single administrative error, but a continuing policy, custom, practice, failure of oversight, and deliberate indifference to lawful police authority requirements.

80. Plaintiff alleges that the March 2024 LEDI Application constitutes written, signed, state-submitted evidence of the Village's continued recognition of Bonds as Chief, further supporting policymaker ratification under Monell.

## H. Public Ratification of Bonds

81. Plaintiff alleges that the Village's continued public recognition of Bonds as Chief, despite his alleged inactive status, constituted final policymaker ratification, binding the Village under *Monell* and confirming that Bonds' actions reflected official municipal policy.

## I. Illegally Appointed Officers and Related Incidents

82. Plaintiff alleges that between approximately October 13, 2021 and December 31, 2025, fifteen (15) Washington Park Police Notice of Appointment filings were submitted through EDI or LEDI by Allen E. Bonds, despite Bonds being inactive, uncertified,

15

separated, or otherwise lacking lawful authority to appoint, hire, rehire, activate, or submit personnel records for police personnel.

83. Plaintiff alleges that each of these challenged appointments was defective, unauthorized, or void because Bonds lacked lawful appointment authority, lacked active certification or lawful employment status with Washington Park, and lacked proper mayoral or board authorization to submit personnel records.

84. Plaintiff alleges that the following officers were appointed or reappointed by Bonds during the disputed period, and that several of these officers engaged in serious incidents, uses of force, pursuits, crashes, shootings, or other harmful events while acting under disputed authority or while relevant to Washington Park's credential verification and supervision failures:

a. Alvin Fenton – part-time, appointed January 10, 2022.

b. Dwayne Stanley – part-time, appointed January 10, 2022.

c. Hung Nguyen – part-time, appointed January 10, 2022.

d. Albert Harris – full-time, appointed July 13, 2022.

e. Jadden Smith – part-time, appointed October 19, 2022.

f. Marlon Manuel – full-time, appointed December 19, 2022.

g. Royce Cole – part-time, appointed August 17, 2022.

h. Kenyon Sanders – full-time, appointed October 3, 2022; involved in an August 24, 2023 shooting of Kyeiree Myers and a November 23, 2025 pursuit ending in a fatal crash.

i. Michael Baxton – full-time, appointed February 27, 2023; involved in an August 13, 2023 excessive force incident injuring two civilians.

j. Jordan Harris – full-time, appointed September 1, 2023.

k. Justin Gaither – full-time, appointed December 7, 2022; charged and convicted for tasing and using excessive force on Larry Shaw on March 19, 2023.

l. Taneisha Chellise Diggs – full-time, appointed July 17, 2024; involved in a November 23, 2025 pursuit resulting in the death of Shontez Campbell.

m. Terry Lee Pruitt – part-time, appointed July 7, 2025; involved in an August 14, 2025 collision at Illinois Route 111 and St. Clair Avenue.

n. Marilyn Jackson – part-time, appointed June 9, 2025.

o. Stanley R. Clemons – part-time, appointed November 24, 2025; involved in a May 12, 2025 shooting while working off-duty security.

85. On June 17, 2025, the Village Board of Trustees passed a Resolution purporting to appoint Allen E. Bonds as Chief of Police for the Village of Washington Park.

86. Plaintiff alleges that despite the passage of the June 17, 2025 Resolution, Mayor Angie Rodgers failed to submit any Notice of Appointment, Form E, or other legally required appointment documentation to ILETSB.

87. Plaintiff alleges that Mayor Rodgers failed to administer the oath of office to Bonds, failed to swear him in as Chief of Police, and failed to file any oath of office documentation with the Village Clerk or ILETSB.

88. Plaintiff alleges that Mayor Rodgers further failed to report the June 17, 2025 Resolution to ILETSB, failed to notify ILETSB of any change in Bonds' status, and failed to ensure that the appointment complied with state law, thereby rendering the appointment invalid and legally ineffective.

89. Plaintiff further alleges that the Village Board's passage of the June 17, 2025 Resolution purporting to appoint Bonds as Chief of Police demonstrates that Village officials knew

Bonds was not lawfully serving as Chief prior to that date, knew he remained inactive with ILETSB, and knew no lawful appointment, Form E, or oath of office existed.

90. The Mayor's failure to complete the mandatory statutory steps required for a lawful police chief appointment, despite this knowledge, constitutes deliberate indifference to the statutory requirements governing police authority..

91. Plaintiff alleges that the Village's failure to complete the mandatory statutory steps required for a lawful police chief appointment allowed Bonds to continue exercising police authority functions without lawful appointment, which in turn enabled the unlawful appointments, LEDI access, and personnel actions described in this Complaint.

92. Plaintiff further alleges that although Bonds appeared in ILETSB records as the last individual ever appointed Chief of Police, his authority to act as Chief was fatally compromised because he operated under false, fraudulent, and unauthorized paperwork, including self-submitted Form E filings, dual full-time employment, and misrepresented status.

93. Plaintiff alleges that because Bonds' asserted authority was based entirely on false records and unauthorized submissions, every appointment he made was *coram non judice*— actions taken without lawful authority—rendering all such appointments void, invalid, and legally ineffective.

94. Plaintiff alleges that these incidents demonstrate that the Village deployed officers whose appointments were defective, unauthorized, or inadequately verified, and that these deployments resulted from the Village's failure to maintain lawful appointment controls, certification verification, supervision, discipline, and oversight.

18

## J. Municipal Liability Implications

92. Plaintiff alleges that each challenged appointment was submitted by Bonds during a period when Bonds was inactive, uncertified, separated, or otherwise lacking lawful authority, and that the Village failed to verify, supervise, investigate, or correct these defective appointments.

93. Plaintiff alleges that the serious incidents involving Sanders, Diggs, Gaither, Baxton, Pruitt, and Clemons demonstrate the foreseeable and actual harm caused by the Village's failure to maintain lawful appointment controls, certification verification, supervision, discipline, and oversight.

94. Plaintiff alleges that these incidents further support Plaintiff's *Monell* claim that the Village maintained a policy, custom, or practice of allowing unauthorized, uncertified, inactive, improperly appointed, inadequately screened, or inadequately supervised individuals to exercise police authority, resulting in constitutional violations.

## K. Pattern of Harm and Foreseeability

95. Plaintiff alleges, upon information and belief, that officers whom ILETSB expressly stated were not authorized to work, not certified, or not allowed to be on the street nevertheless received compensation exceeding $75,000 during 2025 while performing law enforcement duties for the Village of Washington Park.

96. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

97. Plaintiff alleges that the challenged appointments and harmful incidents described above were not isolated events but formed a pattern of harm directly traceable to the Village's

19

failure to verify police authority, certification status, lawful appointment procedures, background completion, and rank authority.

98. Plaintiff alleges that multiple officers appointed or reappointed by Bonds during the disputed period engaged in shootings, pursuits, crashes, excessive force incidents, and other harmful events, demonstrating a recurring pattern of misconduct by improperly appointed or inadequately supervised personnel.

99. Plaintiff alleges that the Village knew or should have known that allowing an inactive or unauthorized individual to submit police appointment records created a substantial risk that uncertified, untrained, improperly screened, or unauthorized individuals would exercise police powers.

100. Plaintiff alleges that the Village received or had access to ILETSB records, FOIA materials, public news reports, duty schedules, dispatch records, and internal communications that revealed repeated irregularities in appointment authority, certification status, officer conduct, and LEDI/Form E access.

101. Plaintiff alleges that the Village's failure to act in response to these warnings made the resulting harm foreseeable, including the harm suffered by Plaintiff during the seven traffic stops described above.

102. Plaintiff alleges that the Village's inaction constituted deliberate indifference to the rights of residents, including Plaintiff, because the Village ignored clear indicators of systemic failure and continued to deploy or recognize improperly appointed or unauthorized officers.

20

## L. Failure to Train, Supervise, Screen, Discipline, and Investigate

103. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

104. Plaintiff alleges that the Village failed to screen officers before deployment, resulting in uncertified, inactive, improperly appointed, inadequately screened, or unauthorized individuals exercising police authority.

105. Plaintiff alleges that the Village failed to train officers and supervisors regarding lawful appointment procedures, certification requirements, use of force standards, pursuit policies, LEDI/Form E controls, rank authority verification, and constitutional limitations on traffic stops and detentions.

106. Plaintiff alleges that the Village failed to supervise officers whose appointments were submitted by Bonds during his inactive or unauthorized period, allowing them to engage in dangerous, improper, or unlawful conduct without meaningful oversight.

107. Plaintiff alleges that the Village failed to discipline officers involved in shootings, pursuits, crashes, excessive force incidents, and other harmful events described in this Complaint.

108. Plaintiff alleges that the Village failed to investigate repeated incidents involving improperly appointed or inadequately verified officers, including fatal pursuits, excessive force incidents, injuries to civilians, and other serious events.

109. Plaintiff alleges that the Village failed to control LEDI/Form E access, allowing Bonds to continue submitting personnel records despite his inactive or unauthorized status.

21

110. Plaintiff alleges that the Village failed to verify certification status, appointment authority, rank authority, background completion, and supervisory authority, resulting in widespread misuse of police powers.

111. Plaintiff alleges that these failures collectively constituted a policy, custom, practice, or ratification of deliberate indifference under *Monell* and directly contributed to the constitutional violations suffered by Plaintiff.

## SECTION K — Pattern of Harm and Foreseeability

112. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

113. Plaintiff alleges that the challenged appointments and harmful incidents described above were not isolated events but formed a pattern of harm directly traceable to the Village's failure to verify police authority, certification status, lawful appointment procedures, background completion, and rank authority.

114. Plaintiff alleges that multiple officers appointed or reappointed by Bonds during the disputed period engaged in shootings, pursuits, crashes, excessive force incidents, and other harmful events, demonstrating a recurring pattern of misconduct by improperly appointed or inadequately supervised personnel.

115. Plaintiff alleges that the Village knew or should have known that allowing an inactive or unauthorized individual to submit police appointment records created a substantial risk that uncertified, untrained, improperly screened, or unauthorized individuals would exercise police powers.

22

116. Plaintiff alleges that the Village received or had access to ILETSB records, FOIA materials, public news reports, duty schedules, dispatch records, and internal communications that revealed repeated irregularities in appointment authority, certification status, officer conduct, and LEDI/Form E access.

117. Plaintiff alleges that the Village's failure to act in response to these warnings made the resulting harm foreseeable, including the harm suffered by Plaintiff during the seven traffic stops described above.

118. Plaintiff alleges that the Village's inaction constituted deliberate indifference to the rights of residents, including Plaintiff, because the Village ignored clear indicators of systemic failure and continued to deploy or recognize improperly appointed or unauthorized officers.

## SECTION L — Failure to Train, Supervise, Screen, Discipline, and Investigate

119. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

120. Plaintiff alleges that the Village failed to screen officers before deployment, resulting in uncertified, inactive, improperly appointed, inadequately screened, or unauthorized individuals exercising police authority.

121. Plaintiff alleges that the Village failed to train officers and supervisors regarding lawful appointment procedures, certification requirements, use of force standards, pursuit policies, LEDI/Form E controls, rank authority verification, and constitutional limitations on traffic stops and detentions.

122. Plaintiff alleges that the Village failed to supervise officers whose appointments were submitted by Bonds during his inactive or unauthorized period, allowing them to engage in dangerous, improper, or unlawful conduct without meaningful oversight.

123. Plaintiff alleges that the Village failed to discipline officers involved in shootings, pursuits, crashes, excessive force incidents, and other harmful events described in this Complaint.

124. Plaintiff alleges that the Village failed to investigate repeated incidents involving improperly appointed or inadequately verified officers, including fatal pursuits, excessive force incidents, injuries to civilians, and other serious events.

125. Plaintiff alleges that the Village failed to control LEDI/Form E access, allowing Bonds to continue submitting personnel records despite his inactive or unauthorized status, and failed to implement safeguards to prevent unauthorized submissions.

126. Plaintiff alleges that the Village failed to verify certification status, appointment authority, rank authority, background completion, and supervisory authority, resulting in widespread misuse of police powers by individuals who lacked lawful authority or whose authority was not reliably verified.

127. Plaintiff alleges that these failures collectively constituted a policy, custom, practice, or ratification of deliberate indifference under *Monell* and directly contributed to the constitutional violations suffered by Plaintiff.

**SECTION M — Causation Linking the Village's Failures to Plaintiff's Seven Traffic Stops**

128. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

129. Plaintiff alleges that the seven traffic stops described above occurred during the same period in which the Village allegedly permitted disputed, defective, inactive, uncertified, improperly appointed, or inadequately verified officers to exercise municipal police authority.

130. Plaintiff alleges that the Village's failure to verify appointment authority, certification status, LEDI/Form E authority, and lawful police status created the conditions that allowed unauthorized or inadequately verified individuals to conduct or participate in the stops.

131. Plaintiff alleges that the Village's systemic failures, including its failure to control Bonds' LEDI/Form E access and appointment submission authority, were the moving force behind the unlawful stops and the deprivation of Plaintiff's constitutional rights.

132. Plaintiff alleges that the Village's failure to train, supervise, screen, discipline, and investigate officers allowed unconstitutional stops, detentions, intimidation, and misuse of police authority to occur without correction.

133. Plaintiff alleges that the pattern of harm described in this Complaint made the risk of unconstitutional traffic stops and arbitrary police action foreseeable to the Village.

134. Plaintiff alleges that the Village's policies, customs, practices, failures, and ratifications were the direct and proximate cause of Plaintiff's seven traffic stops, emotional distress, humiliation, loss of liberty, and deprivation of constitutional rights.

**PRAYER FOR RELIEF:**

135 . **WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against the Village of Washington Park, Illinois and the official-capacity Defendants, and award the following relief:

136 . A declaration that the Village's appointment practices, credential-verification failures, LEDI/Form E access failures, rank-authority failures, training failures, supervision failures, and oversight failures violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

137. An injunction requiring the Village to implement lawful policies, procedures, and controls, including but not limited to: verification of certification status for all officers; verification of appointment authority before any Form E or LEDI submission; restrictions and audit controls on LEDI/Form E access; verification of rank authority and supervisory authority; training and supervision requirements for all personnel; documentation, reporting, and oversight mechanisms to prevent unauthorized police activity; and compliance procedures ensuring that no inactive, uncertified, or unauthorized individual may exercise police powers.

138. An award of compensatory damages in an amount to be determined at trial for Plaintiff's constitutional injuries, emotional distress, humiliation, fear, loss of liberty, loss of security, and related damages.

139. An award of allowable court costs and any other recoverable litigation costs permitted by law.

140. Such other and further relief as the Court deems just, proper, and equitable.

**141. JURY DEMAND:**

142. Plaintiff demands a trial by jury on all issues so triable.

26

Respectfully submitted,

DATED: _mm 06/22/2026_

**MARVIN B. STRODE**

*Plaintiff, Pro Se*

Phone: (618) 512-2288

Email: strodestlpark@aol.com