**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MARVIN B. STRODE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**VILLAGE OF WASHINGTON PARK, ILLINOIS, ANGIE RODGERS, ANITA CLARK, KAWAII WILLIAMS, JAMES MADKINS, MARY MCKINNEY, KENDRICK MCKNUCKLES, JULIETTE GOSA, CARLENE TUCKER, ALLEN E. BONDS, and JOHN DOES #1-7,**<br><br>**Defendants.** | **Case No. 3:26-CV-00450-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Marvin B. Strode brings this action against Defendants Village of Washington Park, Illinois (the "Village"), Mayor Angie Rodgers, Village Clerk Anita Clark, Trustee Kawaii Williams, Trustee James Madkins, Trustee Mary McKinney, Trustee Kendrick McKnuckles, Trustee Juliette Gosa, Trustee Carlene Tucker, Allen E. Bonds, and seven John Doe defendants (collectively, the "official capacity defendants"). In his second amended complaint, Strode advances three claims under 42 U.S.C. § 1983: (1) a Village policy or custom led to a violation of his Fourth Amendment rights; (2) a Village policy or custom led to a violation of his Fourteenth Amendment rights; and (3) the Village and the official capacity defendants are subject to municipal liability under the decision in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Additionally, Strode seeks injunctive and declaratory relief against the Village.

## Background

Strode initiated this action on April 7, 2026. (Doc. 3). One week later, he filed an amended complaint as a matter of right. (Doc. 7). Because Strode had already amended his complaint once as a matter of course, he was required to obtain leave of Court before filing an additional amended complaint. *See* Fed. R. Civ. P. 15(a)(2). On May 19, 2026, Strode filed his first amended complaint, thereby attempting to amend his complaint a second time. (Doc. 18). However, Strode did not seek leave before filing the amended pleading. The Court therefore struck it in an order dated May 21, 2026. (Doc. 23). On June 11, 2026, Strode sought leave to file a second amended complaint, which the Court granted the following day. (Docs. 27, 28). Strode filed his second amended complaint on June 26, 2026. (Doc. 29). Defendants now move to dismiss Strode's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 39). Strode filed a response in opposition. (Doc. 46). Accordingly, the motion is ripe for disposition.

Strode's second amended complaint alleges that he was a member of an opposition group adverse to the Village's mayor, Angie Rodgers, from May 2021 through May 2025. (Doc. 29 at p. 5). During that general period, from November 2022 through December 2025, Strode alleges that he was subjected to seven traffic stops by individuals purporting to act as Village police officers. (*Id.* at 8). He alleges that the seven traffic stops occurred as follows:

a. November 2022, Forre Street near the police station;
b. May 2023, near the residence of Ferris Williams;
c. September 2023, near Gosa's house by the old school;
d. March 2024, after he left the residence of Mary McKinney;
e. October 2024, between James Madkins' house and Package I Liquor;
f. February 2025, on Bunkum Road near the residence of Suggs; and
g. December 2025, at Church's Chicken on Caseyville Avenue.

(*Id.*). Strode claims no citations were issued in connection with any of the stops. (*Id.*). He does not explain the reason for the stops, identify the individuals who conducted them, or indicate whether their identities are known to him. Nevertheless, Strode claims that the stops constituted harassment, lacked a lawful basis or reasonable suspicion, and were conducted by individuals whose authority to act as Village police officers had not been properly authorized or verified. (*Id.* at 8, 16). According to Strode, the Village's police department operated during this period "under disputed, defective, or inadequately verified authority." (*Id.* at 8).

In support of these allegations concerning the Village's police department, Strode vaguely states that his review of Illinois Law Enforcement Training and Standards Board ("ILESTB") records, Form E submissions, waiver records, FOIA materials, employment records, duty schedules, dispatch logs, public broadcast materials, and related materials revealed systemic irregularities, conflicting entries, unexplained activation and separation dates, missing background materials, and unauthorized LEDI and Form E submissions. (*Id.* at 5). He also alleges that Allen E. Bonds' status as Chief of Police became inactive on October 15, 2021, but that Bonds continued to act as Chief after that date without lawful authority to do so. (*Id.* at 6-7). According to Strode, Bonds submitted fifteen Notice of Appointments through EDI and LEDI between October 13, 2021, and December 31, 2025, despite his allegedly inactive status. (*Id.* at 7). Consequently, Strode claims these appointments were defective and void. (*Id.* at 11).

Strode further alleges that the fifteen officers Bonds appointed later engaged in shootings, pursuits, crashes, excessive force incidents, and "other harmful events." (*Id.* at 7, 11-12). He contends that the Village ratified Bonds' conduct because a March 2024 LEDI

Application submitted by the Village to the ILETSB, signed by then-Mayor Moore, listed Allen E. Bonds as the Chief of Police for the Village. (*Id.* at 9-10). Finally, Strode identifies several incidents involving third parties in which he claims the Village failed to properly supervise officers, investigate alleged misconduct, and discipline officers. (*Id.* at 11-13).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013).

To survive a Rule 12(b)(6) motion, the plaintiff's allegations must support a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible where a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A reviewing court must "ask itself could these things have happened, not did they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). This means that the plaintiff must "provide some specific facts to support the legal claims asserted in the complaint," and offer "enough details about the subject-matter of the case to present a story that holds together." *Bilek*, 8 F.4th at 586 (citation modified).

## DISCUSSION

To succeed on a § 1983 municipal liability claim, a plaintiff must show "(1) that he suffered a constitutional injury. . . and (2) that the city authorized or maintained a custom of

approving the unconstitutional conduct." *Thompson v.* Boggs, 33 F.3d 847, 859 (7th Cir. 1994); *see also Monell*, 436 U.S. at 651. To establish the existence of an official policy or custom, a plaintiff must show that his constitutional injury was caused by "(1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Latuskin v. City of Chi.*, 250 F.3d 502, 504 (7th Cir. 2001).

Strode does not identify an express policy of the Village or any action taken by an individual with policymaking authority. Instead, his complaint relies on the existence of an alleged widespread policy or custom. There is no precise threshold for how frequently the allegedly unconstitutional conduct must occur, however, the Seventh Circuit has made clear that there must be "more than one instance." *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988); *see also Gable v. City of Chi.*, 296 F.3d 531, 538 (7th Cir. 2002) (finding that three total incidents did not amount to a widespread practice).

A pattern of conduct that is sufficiently widespread in duration or frequency may support an inference that the municipality had knowledge of the conduct. *Cosby*, 843 F.2d at 983 (quoting *Webster v. City of Houston*, 689 F.2d 1220, 1226 (5th Cir. 1982)) (explaining that "[t] he frequency and pattern of the practice alleged to be a custom or usage must be sufficient to give rise to a reasonable inference that the public employer and its employees are aware that public employees engage in the practice and do so with impunity."). If the municipality fails to take corrective action despite such knowledge, the pattern may constitute a municipal policy or custom when that failure reflects deliberate indifference to the rights of those affected. *See, e.g.*, *McLin v. City of Chi.*, 742 F. Supp. 994, 998 (N.D. Ill. 1990; *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its

employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy of custom[.]'"). Specifically, Strode alleges that the Village maintained a policy or custom of failing to adequately supervise, train, discipline, and screen its police officers, and to investigate allegations of officer misconduct. (Doc. 29 at p. 14).

Moreover, a plaintiff alleging municipal liability must allege causation, demonstrating that the challenged custom was the "moving force" behind the constitutional violation. *City of Canton*, 489 U.S. at 379.

Before addressing the substance of Strode's claims, it is worth clarifying that Counts I through III, although pleaded as separate claims under § 1983, each seek to impose municipal liability on the Village under *Monell*. These claims could have been presented as a single *Monell* claim rather than divided into three separate counts. Nevertheless, the Court addresses each count separately.

## I. § 1983 Municipal Liability Under the Fourth Amendment

Count I of Strode's second amended complaint alleges that a Village policy or custom caused a violation of his Fourth Amendment right to be free from unreasonable seizures. (Doc. 29 at p. 16). The first requirement of Strode's § 1983 municipal liability claim under the Fourth Amendment is to plausibly allege that he suffered a constitutional injury. *See Thompson*, 33 F.3d at 859. To state a claim under § 1983 for an unreasonable seizure in violation of the Fourth Amendment, Strode must allege both that the officer's conduct constituted a seizure and that the seizure was unreasonable. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 637 (7th Cir. 2008). A person is "seized" either through the application of physical

force, however slight, *or* through submission to an officer's "show of authority" to restrain one's liberty. *California v. Hodari D.*, 499 U.S. 621, 621 (1991); *see also Belcher v. Norton*, 497 U.S. 742, 747–48 (7th Cir. 2007) ("[P]laintiffs must demonstrate, from all the circumstances surrounding the incident, that a reasonable person in such a situation would have believed that he was not free to leave."). By alleging that he was subjected to traffic stops, Strode adequately pleads that a seizure occurred. Nonetheless, his complaint does not permit the inference that the seizures were unreasonable.

Strode provides virtually no factual detail about the alleged traffic stops. There are no dates, no locations, no identities of police officers, and no explanations for the arrests offered. Although Strode alleges irregularities in the credentials or authority of some Village police officers, he does not allege facts necessary to establish that the individuals who conducted his traffic stops were among those with allegedly deficient authority. Thus, his allegations leave open the possibility that the individuals who conducted the stops were authorized to do so.

Mere allegations of irregularities in some officers' credentials or authority, without factual allegations connecting those irregularities to the individuals who conducted the stops, does not establish that the stops were unreasonable. *See McCauley v. City of Chi.*, 671 F.3d 611, 617 (7th Cir. 2011) (dismissing a *Monell* claim where the plaintiff's factual allegations were equally consistent with a lawful investigation as with wrongdoing). Therefore, Strode fails to allege an underlying Fourth Amendment violation. Because Strode pleads no underlying Fourth Amendment violation, it is unnecessary for the Court to consider whether a policy or custom of the Village was deliberately indifferent to this constitutional right.

## II. § 1983 Municipal Liability Under the Fourteenth Amendment

Count II of Strode's second amended complaint, which alleges that the Village's policies or customs contributed to a violation of his substantive due process rights, is deficient for the same reason discussed above. "To allege a viable substantive due process claim, [the plaintiff] would need to allege conduct under color of state law that 'violated a fundamental right or liberty' and was so 'arbitrary and irrational' as to 'shock the conscience.'" *Nelson v. City of Chi.*, 992 F.3d 599, 604 (7th Cir. 2021) (quoting *Campos v. Cook Cnty.*, 932 F.3d 975 (7th Cir. 2019)).

Strode likewise fails to allege facts satisfying this standard. He does not describe the circumstances surrounding any of the traffic stops or identify any of the officers involved. Nor does he allege enough facts to suggest that the officers acted arbitrarily or irrationally, much less that their conduct was so egregious as to shock the conscience. Instead, as with his Fourth Amendment claim, Strode relies primarily on alleged deficiencies in the officers' appointment, certification, or authority. Strode specifically identifies fifteen individuals whom he alleges were improperly appointed as Village police officers by Bonds. (Doc. 129 at pp. 11-13). He does so without plausibly alleging that the *specific* officers who stopped him lacked authority or reason to do so. Again, the possibility remains that the involved officers were acting lawfully. *See Ashcroft*, 556 U.S. at 682 (establishing that, where an obvious alternative explanation for the alleged conduct exists, the allegations may fail to satisfy the plausibility standard). Strode's allegations, without more, do not establish an underlying substantive due process violation. Thus, because Strode has not plausibly alleged a violation of his constitutional rights, the Court need not address whether the Village's policies or customs were the moving force behind such a violation.

### III. The Village's Liability Under *Monell*

Count III seeks to hold both the Village and the official capacity defendants liable for a pattern of constitutional deprivations under the Supreme Court's decision in *Monell*. *See Monell*, 436 U.S. at 690, n. 55 (observing that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."). But municipal liability under *Monell* requires an underlying constitutional deprivation. *See Thompson*, 33 F.3d at 859. Because Strode has not plausibly alleged that he suffered a violation of his constitutional rights, his municipal liability claim necessarily fails.

In the absence of a plausibly alleged constitutional injury, there is no need for the Court to consider whether the Village or the official capacity defendants maintained a policy evincing deliberate indifference to constitutional rights or whether such a policy was the moving force behind the alleged deprivations. *Id.*

Accordingly, Count III of Strode's second amended complaint is also dismissed.

### IV. Declaratory and Injunctive Relief

Under Article III of the United States Constitution, jurisdiction of the federal courts is limited to actual "cases" and "controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-560 (1992); *see generally Sierra Club v. Morton*, 405 U.S. 727 (1972). When seeking prospective relief from an allegedly unconstitutional policy, a plaintiff must first establish that he has standing to bring the claim. *Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010).

To establish standing to obtain prospective relief, the plaintiff must "show that: (1) they are under threat of an actual and imminent injury in fact; (2) there is a causal relation between that injury and the conduct to be enjoined; and (3) it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury." *Id.*

Strode's second amended complaint falls short of the first element. He has not pleaded an actual injury to himself, nor has he pleaded that such an injury will imminently occur in the future. *See Schirmer*, 621 F.3d at 586 (explaining that a justiciable controversy requires more than a wholly speculative possibility of constitutional injury). Although Strode identifies past conduct by Village officers that he alleges was unconstitutional and directed at other citizens, that conduct alone does not establish a present case or controversy sufficient to support a claim for prospective relief. This is so for two reasons. First, Strode fails to allege sufficient facts to show that the traffic stops were illegal and violative of his constitutional rights under the Fourth or Fourteenth Amendments. Second, he does not at all plead that the traffic stops are likely to occur again. *See City of Los Angeles v. Lyons*, 461 U.S. at 95, 109-10 (1983) (finding no standing where the plaintiff could not plausibly allege that he would again be subjected to the same use of excessive force without relying on speculation).

Accordingly, because Strode has not established that he has standing to seek prospective relief, he is not entitled to declaratory or injunctive relief against the Village, and Count IV must be dismissed.

## CONCLUSION

For these reasons, Defendants' Village of Washington Park, Illinois, Angie Rodgers, Anita Clark, Kawaii Williams, James Madkins, Mary McKinney, Kendrick McKnuckles, Juliette Gosa, Carlene Tucker, Allen E. Bonds, and the seven John Doe's Motion to Dismiss (Doc. 39) is **GRANTED**, and the Second Amended Complaint is **DISMISSED without prejudice** for failure to state a claim.

Strode will be granted one final opportunity to state a claim. If he wishes to file a third amended complaint, the deadline for doing so is **December 14, 2026**. Failure to file an

amended complaint by that deadline will result in the dismissal of this entire action with prejudice.

**IT IS SO ORDERED.**

**DATED: November 12, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**